MICHAEL BAILEY
United States Attorney
District of Arizona

ELIZABETH K. SICHI
Assistant U.S. Attorney
Illinois State Bar No. 6271368
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4408
Telephone:  (602) 514-7500
Facsimile:  (602) 514-7760
E-Mail: Elizabeth.Sichi@usdoj.gov
Attorney for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susana Villanueva Garcia, individually and on behalf of all statutory beneficiaries of J.L.V. and Selia Garcia Castaneda; and Julia Cesar Garcia, an individual,<br><br>            Plaintiffs,<br>     v.<br>United States of America,<br><br>            Defendant. | Case No.: 2:20-CV-00220-MTL<br><br>**DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS** |

Defendant United States of America (the "United States"), by its undersigned attorneys, moves to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.[1] In support of its motion, the United States states as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Factual Background and Procedural Background.**

The purpose of the Tonto National Forest, which, at 2.9 million acres, is the largest national forest in Arizona and one of the largest national forests in the United States, is to

---

[1] *See* Certification of Conferral, attached as Ex. 3.

protect its watersheds, water quality, and riparian area conditions and to permit public recreation in portions of the forest. *See* Declaration of Debbie Cress, Ex. 1, ¶4, 15. On July 15, 2017, pursuant to a contract with and permit issued to Recreation Resource Management ("RRM"), RRM operated developed recreational sites in the Tonto National Forest. *Id*., ¶8. Under an Annual Operating Plan, RRM collected day use fees for developed recreational sites, including the Water Wheel Picnic Site. Ex. 1, ¶¶10-11. (Cold Springs was a dispersed recreation site; it had not been improved or developed for recreation. *Id*., ¶30.). The day use fee at that time was $9 per vehicle of up to five persons. *Id*., ¶11. However, day use fees were not charged to persons legitimately walking or hiking through the forest without using developed recreational facilities and services or to persons with America the Beautiful Passes. *Id*., ¶12. Fees collected were applied toward RRM's cost of operating, maintaining or improving developed recreational areas in the Tonto National Forest. *Id*., ¶13. RRM paid a portion of the fees to the U.S. Forest Service or, in the alternative, performed work to offset the fees pursuant to a Granger-Thye fee offset agreement. *Id*.

Recreational users of the Water Wheel Picnic Site usually parked at the Water Wheel parking lot located off of the Houston Mesa Road. Ex. 1, ¶16 and Attachments E and F. On July 15, 2017, there were two highway-grade signs on the Houston Mesa Road labeled "Flash Flood Area," one posted for northbound traffic approaching the Water Wheel parking lot, and one posted for southbound traffic approaching the Water Wheel parking lot. *Id*., ¶17 and Attachments E and G. On July 15, 2017, there were also warning posters located at a kiosk near the trailhead that leads to the Water Wheel Picnic Site, the developed site closest to Cold Springs. Ex. 1, ¶18-21 and Attachments H and I. The posters included warnings to swim "AT YOUR OWN RISK" and to "[b]e aware of changing weather conditions." *Id*. at ¶¶19-20 and Attachment I.

Following the 2017 Highline Fire, a Burned Area Emergency Response Assessment ("BAER") was performed. *Id*., ¶25 and Attachment J. However, there was no BAER recommendation to close the portion of the Ranger District that included the Water Wheel Picnic Site or Cold Springs, and there were no models of potential flooding from rain over the

Highline Fire Scar or lower Ellison Creek drainage and the impact to the Water Wheel area, including Cold Springs. Ex. 1, ¶¶26, 28.

The U.S. Forest Service relies on the NWS, an agency of the National Oceanic and Atmospheric Administration (NOAA), to issue flash flood warnings because the U.S. Forest Service does not have the capacity or the expertise to issue, reissue or broadcast flash flood warnings itself. Ex. 1*,* ¶34.  Unlike the NWS, the U.S. Forest Service, including Tonto National Forest, does not employ meteorologists for this purpose, and the monitoring equipment for rainfall and flood warning are operated by NOAA and county officials. *Id*., ¶35.

The U.S. Forest Service expects recreational users to be aware of changing weather conditions, including the possibility of monsoons and flash flooding, and to take appropriate precautions, including departing the area, when necessary. *Id*., ¶36. Thousands of recreational users have safely hiked, camped and swam at the Tonto National Forest annually. *Id*., ¶7. Moreover, there had been no injuries or deaths due to flooding in the Water Wheel area or Cold Springs from at least the year 2000 until the date of this incident. Declaration of Mike Johnson, Ex. 2, ¶3; *see also* Ex. 1, ¶29.

Plaintiffs allege that on Saturday, July 15, 2017, members of the Garcia and Garnica families had gathered together to celebrate Maria Raya-Garcia's birthday in the Water Wheel area of the Tonto National Forest. *See* Doc. 1, ¶¶34. The families played and swam in Cold Springs. *Id*. at ¶38. At approximately 1:45 p.m. that day, the NWS issued a flash flood warning for the region. Doc 1*,* ¶39; *see also* Ex. 1, ¶33, Attachment K. However, the family members remained in the area, which remained open to the public, unaware of the NWS flood warning. Doc. 1, ¶¶40-41. Ten family members were swept away by the flood. *Id*., ¶46.

Plaintiffs bring three counts against the United States for Negligence/Gross Negligence (Count I), Wrongful Death (Count II), and Negligence Infliction of Emotional Distress (Count III) based on the following allegations:

    a.    Failing to warn individuals in the Water Wheel  area of the potential for flash floods;

    b.    Failing to warn individuals in the Water Wheel area of

the NWS flood alert that was issued on July 15, 2017;

c.  Failing to close the Water Wheel area to the public after the NWS flood alert was issued on July 15, 2017; and

d.  Other such acts yet to be discovered.

*See* Doc. 1, ¶60.

## II. Legal Standard Governing Rule 12(b)(1) Motions and Waiver of Sovereign Immunity.

Plaintiffs – not the United States – bear the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Tosco Corp. v. Comtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir. 2001); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Fundamentally, federal courts are courts of limited jurisdiction. *Kokkonen*, 511 U.S. at 377. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc.*, 873 F.2d at 1225.

The United States, as a sovereign entity, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *Tobar v. U.S.*, 639 F.3d 1191, 1195 (9th Cir. 2011); *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002). Waivers are construed narrowly in favor of the government unless Congress clearly indicates otherwise. *Tobar v. U.S.*, 639 F.3d 1191, 1195 (9th Cir. 2011); *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992).

One of the limited waivers of sovereign immunity is the Federal Tort Claims Act (FTCA), which provides a remedy against the United States for the torts of its officers and employees. *United States v. Orleans*, 425 U.S. 807, 813 (1976). The waiver of sovereign immunity contained in the FTCA is subject to the limitations and exceptions provided therein. *See e.g.*, 28 U.S.C. §§ 1346(b) and 2680; *Orleans*, 425 U.S. at 813. The terms and conditions of a waiver of sovereign immunity establish and limit a court's jurisdiction to entertain a suit

- 4 –

against the United States. *United States v. Sherwood*, 312 U.S. 584, 587-88 (1941)). The terms and conditions of the FTCA must be strictly construed in favor of the sovereign. *United States v. Kubrick*, 444 U.S. 111 (1979).

Sovereign immunity is a defense properly raised under Rule 12(b)(1). *Tobar*, 639 F.3d at 1194. In deciding the United States' Rule 12(b)(1) motion, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The court may resolve factual disputes concerning the existence of jurisdiction without converting the motion to one for summary judgment. *Land v. Dollar*, 330 U.S. 731, 735 (1947).

### A. The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims Because They Are Barred by Arizona's Recreational Use Statute.

Under the FTCA, the waiver of sovereign immunity must be predicated on a viable state law tort under "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . . in the same manner and to the same extent as a private individual under like circumstances"); *Richards v. United States*, 369 U.S. 1, 7-8 (1962). Here, the Arizona's Recreational Use Statute, A.R.S. § 33-1551(A), governs Plaintiffs' claims. Thus, the Court must apply § 33-1551(A) to determine whether it has subject matter jurisdiction. *See United States v. Olson*, 546 U.S. 43, 44-46 (2005) (FTCA waives the federal government's sovereign immunity only where local law would make a private person liable in tort, even where uniquely governmental functions are at issue); *see also Wilson v. U.S.* 909 F.2d 953, 955-56 (8th Cir. 1993) ("[T]he United States is entitled to the benefit of state recreational use statutes, if applicable, when it is sued under the Federal Tort Claims Act."); *Champion v. United States*, No. C 04–0101 CW2005 WL 1514095, *3-4 (N.D. Cal. June 15, 2005) (applying California's recreational use statute and dismissing the United States for lack of subject matter jurisdiction).

The Arizona Recreational Use statute provides that:
> A public or private owner, easement holder, lessee, tenant, manager or occupant of premises[,] is not liable to a recreational or educational user except on a showing that the owner, easement holder, lessee, tenant, manager or occupant was guilty of willful, malicious, or grossly negligent conduct that was a direct cause of the injury to the recreational or educational user.

A.R.S. § 33-1551(A).

There are limited exceptions[2] to a private owner or manager's immunity when it opens up its land for entrance by others for recreational purposes. The protection of the Arizona Recreational Use statute is inapplicable when the private owner or manager: (1) charges the person entering the land an admission fee (with the exception of certain state fees or nominal fees charged by a public entity or nonprofit corporation to offset the cost of providing the educational or recreational premises and associated services); or (2) "was guilty of willful, malicious or grossly negligent conduct that was a direct cause of the injury to the recreational or educational user."A.R.S. §33-1551(A),(B), (C)(5). As will be discussed further below, the Recreational Use Statute precludes Plaintiffs' suit because the Garcia and Garnica family members were recreational users at the time of the incident and because no Recreational Use exception applies.

### 1. The Family Members Were Recreational Users of U.S. Property.

#### a. Swimmers Are Recreational Users.

First, the Garcia and Garnica family members were recreational users of United States property. As Plaintiffs allege, the family members were playing and swimming at Cold Springs, celebrating Ms. Raya-Garcia's birthday. Doc. 1, ¶¶ 38, 34. The Arizona Recreational Use Statute defines a "recreational user" as:

> a person to whom permission has been granted or implied **without the payment of an admission fee** or any other consideration to travels

---

[2] The statute's provision regarding the attractive nuisance doctrine (A.R.S. § 33-1551(B)), is inapplicable here as there is no allegation that decedents were trespassing children attracted to the premises. *See generally* Doc. 1.

> across or to enter premises to hunt, fish, trap, camp, hike, ride, engage in off-highway vehicle, off-road recreational motor vehicle or all-terrain vehicle activity, operate aircraft, exercise, **swim or engage in other outdoor recreational pursuits**. . . .

A.R.S. §33-1551(C)(5) (emphasis added). Thus, under the plain language of the statute, swimming is a recreational use. Moreover, "other outdoor recreational pursuits" have been interpreted as covering a wide range of recreational activities. In *Wringer v. United States*, for example, the court held that walking around a dock area and onto ice on a lake in a national forest was a recreational pursuit. 790 F. Supp. 210, 212-213 (D. Ariz. 1992). Thus, the Complaint's factual allegations that the family members were playing and swimming satisfy the statutory definition of recreational user.

### b. The Admission Fee Exception to the Recreational Use Statute Does Not Apply.

Plaintiffs do not allege that the family members paid a day use fee. *See generally* Doc. 1. Indeed, if they were only walking or hiking through and using undeveloped areas of the Tonto National Forest, such as Cold Springs, they would not have been required to pay a day use fee, and certainly the fee exception to the Recreational Use Statute would not apply. *Cf.* A.R.S. §33-1551(C)(5); *See* Ex. 1, ¶¶12, 30.

Even if the Complaint alleged that they did pay to use developed facilities, such as picnic tables at the Water Wheel Picnic Site, the Ninth Circuit has rejected arguments that such use fees be construed as admission fees. For example, in *Jones v. United States*, 692 F.2d 1299, 1300 (9th Cir. 1982), the plaintiff was injured in Olympic National Park while snow-tubing on an inner tube that she had rented from a vendor. *Id.* The vendor, which was located on Government property, paid the Government a fixed rental fee and even a percentage of its gross receipts. *Id.* at 1303. The Ninth Circuit nonetheless found the United States immune from suit under Washington's Recreational Use Statute because "the fee was charged for the use of the inner tube and was not a fee charged for the use of the land." *Id.* at 1303.

Since *Jones,* appellate courts have narrowly construed recreational use statutes that speak in terms of "fees" and "charges" as compared with others that use the term

"consideration." For example, in *Howard v. United States,* 181 F.3d 1064 (9th Cir. 1999), the Ninth Circuit held that Hawaii's Recreational Use Statute, which used the narrow terms "fees" and "charges" rather than the broad term "consideration," barred suit against the United States where the plaintiff had paid a private company for sailing lessons on an Air Force Base. The court concluded that "[a]lthough [the federal agency] did receive a reduced fee for two of its employees, Plaintiff was paying for a service provided by U.S. Sailing, similar to . . . the inner tube renter in *Jones,*" rather than for use of the United States' land. *Id.* at 1070-71. The United States was thus found to be immune from liability under the statute, even though its employees benefitted from the plaintiff's use of the land. *See also Wilson v. United States,* 989 F.2d 953, 957 (8th Cir. 1993) (holding that $2 per person/per night fee paid by Boy Scout troop to spend the night at Army post was not a "charge" to enter onto the land or for use of the land); *cf. Ducey v. United States,* 713 F.2d 504, 510 (9th Cir. 1983) (holding that because Nevada's Recreational Use Statute "is worded not in narrow terms of 'fee' or 'charge', but rather in the far more encompassing terms, for a consideration,'" the statute did not immunize the United States from liability). This Court should construe the Arizona Recreational Use Statute similarly and reach the same conclusion as the courts in *Jones, Howard,* and *Wilson,* and hold that if the family members did pay a day use fee to use the Wagon Wheel Picnic Site or other developed area, it was not an admission fee to access undeveloped areas of the Tonto National Forest such as Cold Springs.

Moreover, if the family members did pay a day use fee, such fee would have been a "nominal fee" under Arizona's Recreational Use Statute, which further provides:

> A nominal fee that is charged by a public entity or a nonprofit corporation to offset the cost of providing the educational or recreational premises and associated services does not constitute an admission fee or any other consideration as prescribed by this section.

A.R.S. §33-1551(C)(5).

Here, any day use fee that may have been paid was both nominal and used to offset the costs of operating, maintaining and providing recreational access to developed sites in the Tonto National Forest. First, if paid, the day use fee for the Water Wheel Picnic Site would

have been $9 per vehicle of up to five persons. *See* Ex. 1, ¶11. Such a fee, which amounts to $1.80 per person, is clearly "nominal," as the Arizona Court of Appeals recently held in *Allen v. Town of Prescott Valley*, 244 Ariz. 288, 289, 291, 418 P.3d 1061 (App. 2018). In *Allen*, which involved a softball player who sustained injuries during a league game, the court held that a $270 fee charged by the town to each team was a nominal fee under the Arizona Recreational Use Statute. 244 Ariz. 288, 289, 291, 418 P.3d 1061 (App. 2018). Per player, per game, the fee amounted to $2.81 – a dollar more per person than the day use fee in this case. *Id*. Moreover, the court held that it did not matter that the participant himself paid most of the fee for the entire team or that his teammates did not reimburse him for their shares of the total. *Id.* The court explained that the legislative history was clear that the purpose of the amendment to the Arizona Recreational Use Statute was to ensure that "a property owner would not lose the protection of the statute by charging a 'nominal fee' to maintain the premises and associated services.'" *Id*., ¶10.

Second, day use fees collected by Recreation Resource Management ("RRM") in this case were applied toward the cost of actually operating, maintaining or improving developed recreational facilities in the Tonto National Forest. *Id*., ¶13. A portion of the fees collected were then either paid to the U.S. Forest Service, whose purpose is to protect watersheds and permit public recreation in portions of the forest, or offset by work on improvements performed pursuant to a Granger-Thye fee offset agreement (*id*.) which is authorized by 16 U.S.C. § 580d. Thus, once again, the facts in the present case are similar to *Allen*, where the nominal fee charged to the plaintiff's softball team was used to partially offset costs incurred in running the league, including field maintenance, lighting and umpires. 244 Ariz. at 289. Consequently, here, as in *Allen*, any fee paid by the family members would have been nominal under A.R.S. §33-1551(C)(5).

    **2.**    **The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Negligence Claims, including Negligent Infliction of Emotional Distress.**

The Court should dismiss Plaintiffs' claims based on simple negligence for lack of

subject matter jurisdiction because such claims are barred under the Arizona Recreational Use Statute. *See* A.R.S. § 33-1551(A) (limiting liability unless the owner was "guilty of willful, malicious, or grossly negligent conduct that was a direct cause of the injury to the recreational or educational user.").

Thus, Plaintiffs' allegations in Count I of the Complaint that the United States "owed a duty to refrain from engaging in "**negligent** . . . action or inaction" **(**Doc. 1, Count I, ¶57) (emphasis added)), in Count II for "**negligent**" failure to warn of flash flood risk (*id*., Count II, ¶66) (emphasis added)), and in Count III for **negligent** infliction of emotional distress should be dismissed. *Id*. at Count III.  Thus, Counts I, II, and III should be dismissed as they are barred by the Recreational Use Statute.

Furthermore, as to Count III for negligent infliction of emotional distress, Arizona has adopted the Restatement (Second) of Torts' formulation. *See Keck v. Jackson*, 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979). Section 313, Emotional Distress Unintended, of the Restatement provides:

> (1) If the actor **unintentionally** causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>
>     (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
>
>     (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
>
> (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

Restatement (Second) of Torts § 313 (1965) (emphasis added). *See also Villareal v. Ariz. Dep't of Transp*., 160 Ariz. 474, 481, 774 P.2d 213, 220 (1989) ("Negligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental

anguish that manifests itself as a physical injury, and be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant."). Accordingly, Plaintiff's negligent infliction of emotional distress claim does not comport with the requirements of the Arizona Recreational Use Statute.

Plaintiffs cannot save this claim by alleging in the alternative "grossly negligent, willful, or malicious" infliction of emotional distress (Doc. 1, ¶72) because Arizona recognizes no such tort.[3] Consequently, Count III of Plaintiffs' complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) because the United States is immune from negligence, and because Plaintiffs cannot show that a private person in Arizona would be subject to liability for a hybrid tort of willful, malicious or grossly negligent infliction of emotional distress. *See* 28 U.S.C. §2674.

### 3. The United States Was Not Willful, Malicious or Grossly Negligent.

To invoke the exception to the Arizona Recreational Use Statute as to Counts I and II of the Complaint, Plaintiffs must establish jurisdictional facts that the United States' conduct was "willful, malicious or grossly negligent." Although the statute does not define "willful" or "malicious," in *Wringer*, the court applied the definition of "willful misconduct" set forth in *Southern Pac. Trans. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975), as "intentional, wrongful conduct, done either with knowledge that serious injury to another probably will result or with a wanton and reckless disregard of probable results." 790 F. Supp. at 213 (quoting *Leuck*, 111 Ariz. at 563, 535 P.2d at 602).

---

[3] In order to bring a claim of intentional infliction of emotional distress, Plaintiffs must plead and prove that the defendant's conduct was "so outrageous in character and so extreme [in] degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing, Int'l.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (App. 1995). "Even if the defendant's acts are done willfully, intentionally and maliciously, with intent to inflict mental suffering and emotional distress, it becomes the duty of the court in the first instance, as society's conscience, to determine whether the acts complained of can be considered as **extreme and outrageous** conduct in order to state a claim for relief." *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (1969), *overruled on other grounds by Godbehere v. Phx. Newspapers*, 162 Ariz. 335, 339-341, 783 P.2d 781, 785-87 (1989) (internal quotations omitted) (emphasis added).

The Arizona Recreational Use Statute does define "gross negligence" as "a knowing or reckless indifference to the health and safety of others." A.R.S. § 33-1551(C)(4). The standard does not differ significantly from that of "willful" or "malicious" conduct. "To establish gross negligence, the claimant essentially must show wanton misconduct that 'is flagrant and evinces a lawless and destructive spirit.'" *Badia v. City of Casa Grande,* 195 Ariz. 349, 356, 988 P.2d 134, 141 (Ct. App. 1999) (quoting *Scott v. Scott,* 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953)). A defendant is grossly negligent only if "he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App. 1991). "Gross negligence differs from ordinary negligence in quality and not degree." *Id.* A person can be "very negligent and still not be grossly negligent." *Dickey v. City of Flagstaff*, *vacated on other grounds sub nom*, 197 Ariz. 422, 426, ¶ 14, 4 P.3d 965, 969 (App. 1999). Gross negligence "is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is 'in the air', so to speak." *Scott v. Scott*, 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953). For the reasons set forth below, Plaintiffs cannot meet this burden.

      **a.**     **The United States Warned of the Risk of Flash Flooding.**

As noted above, in deciding a factual jurisdictional motion to dismiss, the court may weigh the evidence presented and determine the facts in order to evaluate whether it has the power to hear the case without converting the motion to a motion for summary judgment. *See McCarthy*, 850 F.2d at 560; *Land*, 330 U.S. at 735.

Thus, the Court should consider the evidence that the United States had installed two highway-grade "Flash Flood Area" warning signs for both northbound and southbound traffic on either approach to the Water Wheel parking lot, both of which were in place on July 15, 2017. *See* Ex.1, ¶17 and Attachments E and G thereto. Moreover, posters at the kiosk located near the trailhead leading to the Water Wheel Picnic Site included a warning to recreational users to be aware of changing weather conditions. *See* Ex. 1, ¶¶18-20 and Attachments H and I thereto. Consequently, the Court need not accept as true Plaintiffs' allegation that "[u]pon

information and belief, there were no warning signs posted in the area regarding the potential for flash flood activity," and allegations that the United States was grossly negligent by failing to warn of the potential of flash floods.[4]

Indeed, even if there had been no such warning signs or posters, the United States would not have been negligent by failing to warn because federal and Arizona courts have held that the Arizona Recreational Use Statute bars recovery in analogous failure to warn cases. In *Wringer*, for example, the court held that a plaintiff's wrongful death action under the FTCA against the United States was barred by Arizona's Recreational Use Statute. 790 F. Supp. at 214. There, a tourist died after falling through thin ice over Lynx Lake. *Id*. at 212. Similar to this case, the plaintiff in *Wringer* alleged that the government was liable because there were no warning signs posted about the danger of thin ice. *Id*. The plaintiff also pointed to one previous drowning incident at the lake that the plaintiff alleged should have informed the government that serious injury would result. *Id*. However, the Court concluded that a single previous drowning resulting from thin ice could not support a "reasonable inference that the government acted willfully or maliciously." *Id*. at 214.

Similarly, in *Dickey*, the Arizona Court of Appeals affirmed summary judgment for the City of Flagstaff in an Arizona Recreational Use Statute case. 4 P.2d at 968. There, a parent whose child struck a tree while sledding in a city park sued the city for negligence, alleging that the city was negligent in not having warning signs posted. *Id*. The Arizona Court of Appeals held that the absence of signs did not constitute gross negligence. *Id*. at 971. Further, the court explained that:

> [t]he purpose of A.R.S. § 1551 is to allow activities that have some risk of injury, such as sledding, to take place. Obviously, if land owners had to assume the risk of possible injuries to recreational users, few recreational areas would be available to the public. Thus, to encourage the opening and continuance of recreation areas for the public, the legislature has placed most

---

[4] Although Plaintiffs have framed the allegation regarding failure warn of the risk of a flash flood as an allegation against the U.S. Forest Service, it should be noted that the only defendant is the United States. Doc. 1. Notably, in this case, the National Weather Service, an agency of the United States, did issue a flash flood warning. Ex. 1, ¶33 and Attachment K.

>of the risk of recreational activities on such lands on the recreational users. . . . [A]llowing activities that have some risk of injury does not necessarily constitute grossly negligent conduct.

*Id.* (internal citations omitted). Further, the court found that plaintiff's evidence that nine previous sledding accidents had occurred at the city park did not demonstrate gross negligence on the part of the city. *Id.* at 970.

Here, even if the Court declined to consider the evidence that there were signs and warning posters, there was not even one previous drowning in the Water Wheel area and Cold Springs in the last 17 years. Ex. 1, ¶¶17-21, 29; Ex. 2, ¶3. Thus, here there is even less basis than in *Wringer* and *Dickey* from which to conclude that the United States' conduct was willful, malicious, or grossly negligent. Consequently, Plaintiffs' failure to warn allegations (*see, e.g.*, Doc. 1, ¶60(a)) should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### b.    The U.S. Forest Service Had No Duty to Monitor or Warn of the NWS Flood Alert.

Since the United States has only waived sovereign immunity for liability to the same extent as private users under like circumstances, it may only be liable for failing to relay a NWS Alert if there were an analogous duty owed by private landowners under Arizona law. *See* 28 U.S.C. §2674. However, neither Arizona, nor any other state, has imposed such a legal duty. Consequently, Plaintiffs establish that the United States was negligent – let alone guilty of willful, malicious or grossly negligent conduct – because it did not ensure that the family members were aware of the NWS flash flood warning.

In *Grant v. Wakeda Campground*, LLC, a New Hampshire court examined whether a landowner had a duty to "constantly monitor weather forecasts and to warn campers and evacuate the campsites every time the weather service issues a severe thunderstorm warning for the area." 631 F.Supp.2d 120, 126 (D.N.H. 2009). There, the plaintiffs were injured during a thunderstorm when a tree fell on their camper at a campground. *Id.* at 120. The court held that absent a voluntary undertaking, the defendant had no such duty, noting, "'no case has ever imposed a duty on property owners to constantly monitor weather forecasts'" (*id.* at 127, quoting *Bowman v. State*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006)) and that "'[f]orecasts

. . . do not, by themselves, constitute actual or constructive notice of dangerous conditions requiring property owner to begin taking steps either to prevent or to remove [the hazards that might follow.]'" *Id*. at 128, quoting *Bowman* 206 S.W.3d at 473. Indeed, "[b]oth the inherent unreliability of weather forecasts and the fact that weather changes constantly justify not imposing on defendant a greater duty to monitor the weather than can be expected of plaintiffs." *Id.*

Furthermore, in *Aramark Sports and Entertainment Services, LLC*, the court examined whether the defendant, a boat rental company, had a duty to monitor weather forecasts it received, report the forecasts to customers, and decide whether it was advisable for customers to venture onto the lake. 831 F.3d 1264, 1283 (10th Cir. 2016). Although the court noted that "[s]uch decisions are sometimes made by governmental authorities (for example, the NPS could close Lake Powell to boating, although it did not restrict access on the day of the accident)" the plaintiffs pointed the court "to no comparable duties under [state] tort law." *Id*. Noting that "nearly every state has encouraged landowners to freely open their property for outdoor recreation by relaxing the traditional standard of care for landowners to keep their property safe," the court declined to impose such duties under Utah law. *Id*. at 1284.

In the present case, as in *Grant and Aramark,* the United States had no duty under Arizona tort law to either monitor weather forecasts or to relay those forecasts to recreational users. Moreover, there is no evidence that the U.S. Forest Service voluntarily undertook such a duty, as it did not have the capability to forecast flash floods, to issue flash flood warnings, or to reissue or broadcast such warnings from the NWS. *See* Ex .1, ¶¶34-35. Rather, it warned recreational users that the Water Wheel area was a "Flash Flood Area" on highway signs, as well as reminding them to be alert of changing weather conditions. Ex. 1, ¶¶17-20 and attachments F-I.  Recreational users were expected to be aware of the weather, including the possibility of monsoons and flash flooding, and to take appropriate precautions, including departing the area, when necessary. Ex. 1, ¶¶17-20, 36 and Attachments F-I. Consequently, Plaintiff's allegations that the United States breached its duty to warn individuals in the Water Wheel area of the NWS flood alert (*see, e.g*., Doc. 1, ¶60(b)) should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(1) because no such duty exists under state law.

### c. The United States was Not Willful, Malicious or Grossly Negligent By Not Closing the Water Wheel Area.

Finally, the evidence does not support the conclusion that the United States was willful, malicious or grossly negligent by not closing the Water Wheel area or Cold Springs after the NWS issued the flood warning. The case of *Armenta v. City of Casa Grande* is particularly helpful in analyzing the gross negligence standard in the instant case. In *Armenta*, a teenage boy was riding his bicycle in a city park when his friend suggested that he try to touch the crossbar of a soccer goal while riding. 205 Ariz. 367, 369, 71 P.3d 369 (App. 2003). As he tried to touch the crossbar, he was thrown off balance, hit the crossbar with some force, and the crossbar broke. *Id*. In the ensuing fall, he was injured. *Id*.

At trial, the plaintiff presented evidence that an employee of the City had modified the crossbar by welding pieces of galvanized pipe into the crossbar to lengthen it. 205 Ariz. at 372, 71 P.3d at 364. There was no evidence that the crossbar had been inspected, and a City witness admitted that one of the City's welds failed, causing the crossbar to break during the plaintiff's accident. *Id.* A City witness agreed that "if the crossbar had been properly welded, he would not have expected the weld to fail '[u]nder the condition of one kid hanging on it.'" *Id.* In spite of these facts, the Court of Appeals held that the City was not grossly negligent. 205 Ariz. at 373, 71 P.3d at 365. Prominent in the Court's reasoning were the facts that there were no reports of the other similar accidents, and that City inspections would not necessarily have shown a problem with the welds on the crossbar. *Id.*

In the present case, as in *Armenta*, there were no previous injuries or deaths from flooding in the Water Wheel area or Cold Springs going back to at least the year 2000. Ex. 1, ¶29. Moreover, although there was an inspection in the form of a BAER assessment following the 2017 Highline Fire, it did not result in a recommendation to close the portion of the Ranger District that included the Water Wheel Picnic Site or Cold Springs. Ex. 1, ¶27. Further, the NWS warning itself was not specific as to how far flash flooding might occur, and there were no models of potential flooding from rain over the Highline Fire Scar or lower Ellison Creek

drainage and the impact to the Water Wheel area, including Cold Springs. Ex. 1, ¶¶28, 33. Given these facts, the United States clearly did not have knowledge that it was probable that swimmers at Cold Springs would be injured or killed in a flash flood. The most that can be said is that the United States did not prohibit access to the area and, under *Armenta*, this does not amount to gross negligence under the Arizona's Recreational Use Statute. The United States thus has not waived subject matter jurisdiction, and Plaintiff's remaining allegations of negligence, including not closing the Water Wheel area (*see, e.g.*, Doc. 1,¶60(c)), should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### IV. Plaintiff's Allegation Based on Other Acts Yet to be Discovered Should Be Dismissed For Failure to State a Cognizable Legal Theory.

A court may dismiss a complaint for failing to state a claim if the complaint "is vague, conclusory, and fails to set forth any material facts in support of the allegation." *Steifel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1145 (S.D. Cal. 2007); *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 929 (2016). Fed. R. Civ. P. 8(a) requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted).

Here, Plaintiffs' allegation in Doc. 1, ¶60(d) that the United States is liable for "[o]ther such acts yet to be discovered" should be dismissed because it is vague and ambiguous and fails to state a factual basis for Plaintiffs' claim to enable the United States to respond.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

RESPECTFULLY SUBMITTED this 18th day of June, 2020.

                          MICHAEL BAILEY
                          U.S. Attorney
                          District of Arizona

                          *s/Elizabeth K. Sichi*
                          Elizabeth K. Sichi
                          Assistant United States Attorney
                          *Attorney for Defendant United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Joel B. Robbins
Jesse M. Showalter
Lauren E. Channell
ROBBINS & CURTIN, P.L.L.C.
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Tel: (602) 285-0100
Fax: (602) 285-0267
reception@robbinsandcurtin.com

Zachary Mushkatel
MUSHKATEL, ROBBINS & BECKER, P.L.L.C.
1529 N. 99th Avenue
Sun City, Arizona 85251-1964
Tel: (623_ 213-7276
Fax: (623) 974-4739
firm@phoenixlawteam.com
*Attorneys for Plaintiff*

*s/Cathy Cuttitta*
United States Attorney's Office