Joel B. Robbins (011065)
Jesse M. Showalter (026628)
Lauren E. Channell (033484)
ROBBINS & CURTIN, P.L.L.C.
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
reception@robbinsandcurtin.com

Zachary Mushkatel (023377)
MUSHKATEL, ROBBINS & BECKER, PLLC
1529 N. 99th Avenue
Sun City, Arizona 85351-1964
Telephone: (623) 213-7276
Facsimile: (623) 974-4739
firm@phoenixlawteam.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Susana Villanueva Garcia, individually and on behalf of all statutory beneficiaries of J.L.V. and Selia Garcia Castaneda; and Julio Cesar Garcia, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>United States of America,<br><br>Defendant. | 2:20-cv-20-00220-PHX-MTL<br><br>**SECOND AMENDED COMPLAINT**<br><br>**FTCA: Negligence-Wrongful Death**<br><br>(Jury Trial Demanded) |

Plaintiffs complain against Defendant United States of America and allege as follows:

# PARTIES

1. Pursuant to A.R.S. § 12-612, Plaintiff Susana Villanueva Garcia (hereinafter, "Plaintiff") is a proper party to bring this action on behalf of all statutory beneficiaries of J.L.V. and Selia Garcia Castaneda.

2. J.L.V. was a 13-year-old resident of Maricopa County, Arizona at the time of his death on July 15, 2017.

3. Selia Garcia Castaneda was a 57-year-old resident of Maricopa County, Arizona at the time of her death on July 15, 2017.

4. Plaintiff Susana Villanueva Garcia is, and at all relevant times was, a resident of Maricopa County, Arizona. Plaintiff Susana Villanueva Garcia is the surviving mother of J.L.V. and the surviving daughter of Selia Garcia Castaneda.

5. Under A.R.S. § 12-612, Plaintiff Susana Villanueva Garcia is a statutory beneficiary of her late son, J.L.V., and her late mother, Selia Garcia Castaneda.

6. Plaintiff Julio Cesar Garcia is, and at all relevant times was, a resident of Maricopa County, Arizona. He is the surviving son of Selia Garcia Castaneda and is a statutory beneficiary of his late mother under A.R.S. § 12-612. He is also asserting individual claims for negligence and/or gross negligence.

7. Miguel Garcia is also the surviving son of Selia Garcia Castaneda and is a statutory beneficiary of his late mother under A.R.S. § 12-612.

8. Leon Porfirio is the surviving father of J.L.V. and is a statutory beneficiary of his late son under A.R.S. § 12-612.

9. Defendant United States of America is subject to suit for wrongful deaths caused by the negligent and wrongful acts and omissions of its employees while acting within the course and scope of their office or employment, under circumstances where Defendant, if a private person, would be liable to Plaintiffs, under the Federal Tort Claims Act ("FTCA").

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**JURISDICTION AND VENUE**

10. This action is premised upon federal causes of action under the FTCA, 28 U.S.C. § 2671, *et seq.*

11. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1346(b) in that this is a claim for damages against the United States of America for deaths caused by the negligent and wrongful acts and omissions of employees of the United States while acting within the course and scope of their employment, under circumstances where Defendant, if a private person, would be liable to Plaintiffs.

12. Susana Villanueva Garcia, Julio Cesar Garcia, and Miguel Garcia each timely served a Form 95, "Claim for Damage, Injury, or Death," upon the appropriate government agency under the FTCA, 28 U.S.C. § 2675 on May 14, 2019. More than six months have elapsed since notice was served upon the government agency, and the claims are deemed denied by operation of statute.

13. Leon Porfirio timely served a Form 95, "Claim for Damage, Injury, or Death," upon the appropriate government agency under the FTCA, 28 U.S.C. § 2675 on June 17, 2019. More than six months have elapsed since notice was served upon the government agency, and the claims are deemed denied by operation of statute.

14. This action is timely under 28 U.S.C. § 2401(b) in that notice of the claim was presented to the appropriate federal agency within two years of accrual, and this action was filed within six months of the running of the six-month period after Claimants presented their claims to the appropriate agency.

15. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as Defendant does business in this judicial district and the events or omissions giving rise to the claim occurred in this judicial district.

16. All conditions precedent to the filing of this lawsuit have occurred or have been performed.

**GENERAL ALLEGATIONS**

**A. The Highline Fire leaves 7,198 acres of charred brush and debris in the Ellison Creek watershed.**

17. Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

18. On June 25, 1990, lighting struck near Bonita Creek, Payson, Arizona.

19. The resulting fire, named the Dude Fire, burned 25,000 acres of forest.

20. On June 8, 2017, firefighters returned to the forest to battle the Highline Fire, which originated eight (8) miles north of Payson, Arizona.

21. The Highline Fire burned across the Dude Fire's scar and incinerated 7,198 acres of grass, brush, and down and dead trees on the National Forest Service lands in the Mogollon Rim area.

22. Nine hundred fourteen (914) firefighters battled the Highline Fire for two (2) weeks.

23. The fire was finally extinguished near the beginning of the monsoon season which was certain to bring sporadic heavy rain storms to the area.

24. The Highline Fire was located in the watershed for Ellison Creek.

25. The Ellison Creek watershed is located in the Tonto National Forest, which is administered and maintained by the United States Forest Service, an agency of the United States Department of Agriculture.

26. Defendant United States, and its agents and employees, knew that the monsoon storms, which fed into Ellison Creek through adjoining waterways, would also wash debris left over from the Highline Fire into the creek and into the public recreation areas along it.

27. One such public recreation area is the Water Wheel area, a popular and easily-accessed hiking and swimming area with waterfalls, a swimming hole, large boulders, and sheer canyon walls. This particular area is the only outlet for waters flowing through the East Verde River which gathered its waters from creeks flowing through areas

1 many miles away.  The Water Wheel area is also located in a canyon which obscures the sight line to areas which fed water through the canyon.  Thus, foreseeable monsoon thunderstorms along the Mogollon Rim would be unseen by visitors to the Water Wheel recreation area.

28. Water Wheel is designated for public use by the United States Forest Service.

29. Defendant United States, and its agents and employees, knew of the long-term impact of wildfires in the Tonto National Forest and Ellison Creek watershed, including dramatically increased erosion and flash flood risk.

30. Defendant United States, and its agents and employees, also knew that the unique geographical features that drew so many visitors to the Water Wheel area, in conjunction with the Highline Fire burn scar, the prior Dude Fire, the narrow canyon with high sheer walls, and the debris jams, cinder, and burned logs through the areas draining into the East Verde River, particularly along Ellison and Bonita Creeks, would create a death trap most acutely during the first foreseeable monsoon rain after the Highline Fire.



31. Beginning on June 21, 2017, the United States Forest Service assembled an interdisciplinary Burned Area Emergency Response (BAER) team, whose purpose was to assess risks to life, property, and natural and cultural resources and to recommend emergency response actions to reduce the anticipated consequences of those risks.

32. In a July 2, 2017 Water Resources Specialist Report, Tonto National Forest Hydrologist Grant Loomis explained that the "**first few high intensity storms** following the fire pose the greatest flash flood risk to downstream areas." He wrote:

> **Post fire peak flows often begin with an initial flush of water, sediment, ash, and entrained post-burn debris that are sometimes characterized as hyper-concentrated flows** (Reed, et al. 2012). These flows have greater energy to transport material than do normal rainfall runoff events on unburned landscapes.
>
> \* \* \* \*
>
> **The initial post-fire conditions represent a threat to life to users of the Highline Trail and to life and property to occupants of subdivisions downstream of the burned area.** Peak flows should decline over time and should return to pre-fire conditions within 5-7 years following the fire.

33. Mr. Loomis had observed two debris jams on Ellison Creek and three or four debris jams on Bonita Creek, which were several miles upstream from the Cold Springs swimming hole. On information and belief, the debris jams were identified in either late June or early July 2017.

34. The BAER team recommended removal of the debris jams as well as the "remov[al] [of] floatable debris in Ellison Creek above private lands and in Bonita Creek above a potable water supply intake structure to reduce potential flood damages."

35. Defendant United States, and its agents and employees, knew that there was a high likelihood that the debris jams would fail during the initial monsoon storms of the season and knew that the failure of the debris jams would increase the intensity of flash flooding and the risk to life and property downstream.

36. Defendant knew that the initial storms following the Highline Fire would create an extreme risk of high-energy, hyper-concentrated flows that would threaten the lives and property of people in or along Ellison Creek.

37. The risk of hyper-concentrated flows created by the Highline Fire burn scar and foreseeable monsoon storms constituted an unreasonably and abnormally dangerous condition in the Tonto National Forest, Ellison Creek watershed, and Water Wheel area.

38. Defendant knew or should have known of the dangerous condition and had ample notice and opportunity to remedy the condition or close the recreation area to visitors.

39. Defendant United States, and its agents and employees, knew or should have known that any person trapped or caught in the foreseeable hyper-concentrated flows during monsoon thunderstorms in the Water Wheel area was likely to be seriously injured or killed.

40. On June 23, 2017, the United States Forest Service issued an order closing the Highline Trail, including portions of the trail upstream from the Water Wheel area, through July 23, 2017.

41. The Highline Trail was closed in part because of the extreme risk of flash flooding and the danger it presented to potential hikers on the trail.

42. After the Highline Trail was closed, the Water Wheel area and Cold Springs swimming hole remained open to the public.

43. The United States Forest Service started working to remove the debris jams on Bonita Creek, but by July 15, 2017, the work was incomplete, and work had not yet begun to remove the debris jams on Ellison Creek.

44. The Water Wheel area and Cold Springs swimming hole remained open to the public even though the debris jams had not been cleared.

**B. The Garcia family members are tragically trapped and killed in a violent flash flood while celebrating a birthday at the Water Wheel swimming area.**

45. On Saturday, July 15, 2017, members of the Garcia and Garnica families gathered at the Water Wheel, a popular swimming and day use area on Ellison Creek in the Tonto National Forest, to celebrate Maria Raya-Garcia's birthday.

46. The visitors included the Garcia family's matriarch, Selia Garcia Castaneda, four of Selia's children—Julio Cesar Garcia, Maria Raya-Garcia, Maribel Raya-Garcia, and Javier Raya-Garcia—Julio's wife, eight-year old son, and one-year old daughter, Maria's husband and three young children, Maribel's two-year old daughter, and Selia's grandson, J.L.V.

47. The families arrived at the Water Wheel parking lot in three separate vehicles.

48. The Water Wheel area, along with several other recreation sites within the Tonto National Forest, were operated, maintained, and managed by a concessionaire, Recreation Resource Management, Inc. (RRM), under a special use permit between RRM and the United States Forest Service.

49. At all relevant times, RRM was register in Arizona as a domestic for-profit corporation.

50. Under the special use permit, RRM was responsible for the costs of general maintenance and upkeep at the Water Wheel area, including but not limited to the costs of maintaining parking lots, picnic areas, restrooms, and sewage facilities, and vegetation and trash removal.

51. Under the special use permit, RRM was required to pay the United States Forest Service an annual permit fee of 12% of its adjusted gross revenue or the minimum annual permit fee of $18,239.00, whichever was greater.

52. In 2017, RRM's adjusted gross revenue under the special use permit was $424,423.74, which was derived exclusively from fees it collected at the recreation areas covered under the special use permit, including the Water Wheel recreation area. Based on the special use permit, RRM paid 12% of $424,423.74—or $50,930.85—to the United States Forest Service for the 2017 annual permit fee.

53. RRM also had the ability to request increases to the visitor fees for day use areas and campsites at the recreation areas covered under the special use permit. RRM requested a fee increase on November 9, 2016, and the United States Forest Service approved the request for the 2017 operating season.

54. On July 15, 2017, RRM charged and collected a fee of $9.00 per vehicle at the Water Wheel area, which was either a parking fee or an entry fee that applied to individuals who drove onto the premises.

55. The fee applied to all vehicles, regardless of whether the vehicle's occupants used facilities such as restrooms or picnic tables, and no fee was charged to individuals who hiked or walked into the Water Wheel area.

56. Upon information and belief, Plaintiffs' brother-in-law, Miguel Garnica, paid the $9.00 for each of the three vehicles in cash and left the money in a designated drop box in or near the parking lot.

57. Nine dollars per vehicle is not a nominal fee either for parking or for entry and use of picnic areas, trails, and swimming holes.

58. Nine dollars per vehicle is also not a nominal fee because it was charged and collected by a for-profit corporation, RRM, and because the United States Forest Service received a financial benefit from RRM under the special use permit by having RRM pay an annual permit fee and assume the costs of general maintenance.

59. When the Garcia and Garnica families arrived, the Water Wheel area was open to the public.

60. At all relevant times, the Garcia family members, including Julio Cesar Garcia and Decedents, were invitees on public land.

61. The family played and swam under clear blue skies in part of the Water Wheel called the Cold Springs swimming hole—an area innocuously known as "the beach"—and could not have anticipated the heavy rains that fell eight (8) miles upstream.

62. At 1:43 p.m., the National Weather Service ("NWS") issued a flash flood warning for the region for the remainder of Saturday, as well as Sunday and Monday. The

NWS flash flood warning stated, in part: "Move to higher ground now. Act quickly to protect your life. Heavy rainfall will likely trigger life threatening flash floods and debris flows in and near the Highline fire scar."

63. The Water Wheel area and Cold Springs swimming hole remained open to the public after the NWS flood alert was issued.

64. Many people, including the Garcia family, remained in the Water Wheel area, apparently unaware of the NWS flood alert.



(https://www.azcentral.com/pages/interactives/arizona-monsoon-payson-flash-flood-deaths/)

65. Without warning, a black wall of water, logs, rocks, mud, and debris descended on the Water Wheel area, moving far too fast for those in its path to escape.

66. Julio Cesar Garcia, his wife, eight-year old son and one-year old daughter were all caught in the flood waters but were able to grab onto trees or rocks and make their way to safety.

67. Julio Cesar Garcia watched helplessly as the rest of his family members were swept away in the flood. He saw his nephew, J.L.V., in the water and reached down to grab his shirt, but a wave struck J.L.V. from behind, and Julio lost his hold on the boy.

68. A total of ten (10) people were swept away by the wall of debris and died in the flood: Selia Garcia Castaneda, Maria Raya-Garcia, her husband and three children, Maribel Raya-Garcia and her daughter, Javier Raya-Garcia, and J.L.V.

69. Julio Cesar Garcia sustained injuries in the flood and was transported to a hospital for treatment, along with his wife and two children.

70. The United States Forest Service closed this area of Ellison Creek after the deaths of the Garcia and Garnica family members.

**C. Defendant failed to protect visitors from the extreme flash flood danger, despite knowing visitors would likely be killed if they became trapped in flood waters.**

71. Defendant, through its agents and employees of the United States Forest Service, was aware of the NWS flood alert and knew that the flash flood danger and the residual effects of the Highline Fire, including the likely failure of debris jams, posed a serious risk of injury or death to individuals playing or swimming in Ellison Creek and Water Wheel.

72. Defendant allowed the Water Wheel area, including Cold Springs swimming hole, to remain open despite knowing that a hyper-concentrated flow was highly likely following a monsoon thunderstorm of the type known to frequently occur in the watershed for the East Verde River below the Mogollon Rim.

73. Defendant knew that the area was flood prone in general, even without the additional risk created by the Highline Fire, and it knew that flash floods would typically occur here every five years or so.

74. After the July 15, 2017 flood, Brandon Forbes, a hydrologist with the United States Geological Survey, was quoted as saying, "This is an event common to the area. This is an event that could occur at any time of the year."[1]

---

[1] https://www.azcentral.com/pages/interactives/arizona-monsoon-payson-flash-flood-deaths/

75. Defendant allowed the Water Wheel area to remain open to the public after the NWS alert was issued at approximately 1:43 p.m. on July 15, 2017.

76. As a result of Defendant's negligent, grossly negligent, reckless, willful, or malicious acts and omissions, Selia Garcia Castaneda, J.L.V., and eight other members of the Garcia and Garnica families were killed in the flash flood.

77. Plaintiff Julio Cesar Garcia was caught and injured in the flood and witnessed his family members being swept away to their deaths, and as a result, he suffered economic and noneconomic damages, including pain and suffering, grief, emotional distress, and loss of enjoyment of life.

78. Plaintiff Susana Villanueva Garcia and all other statutory beneficiaries of Selia Garcia Castaneda and J.L.V. sustained economic and noneconomic damages, including pain and suffering, grief, emotional distress, loss of love and affection, and loss of enjoyment of life.

## COUNT I

### Negligence

79. Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

80. Under the FTCA, Defendant United States of America is the proper defendant for this cause of action.

81. At all relevant times, Plaintiff Julio Cesar Garcia and the Decedents were invitees on public lands and had a legal right to be on the premises.

82. Defendant owed a duty of reasonable care with respect to the management of its public recreational lands, including the Tonto National Forest, Ellison Creek Watershed, and Water Wheel day use area.

83. Defendant's decision to designate the Water Wheel area for public recreational use was discretionary but, once that decision was made, Defendant and its agents and employees were under a duty to act reasonably to protect visitors from hidden dangers which were known to Defendant and posed a significant risk of serious bodily

injury or death. Therefore, Defendant is not entitled to immunity under the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a).

84. The flash flood risk and residual effects of the Highline Fire constituted an unreasonably dangerous condition, which Defendant knew or should have known would endanger the lives and safety of invitees such as the decedents.

85. Defendant and its agents and employees breached their duty of care in at least the following ways:

    a. Failing to close the Water Wheel area to the public after the BAER team identified debris jams on Ellison and Bonita Creeks and determined that the "first few high intensity storms following the fire [would] pose the greatest flash flood risk to downstream areas";

    b. Failing to close the Water Wheel area to the public after the NWS flood alert was issued on July 15, 2017; and

    c. Failing to take reasonable steps, such as removing debris jams and floatable debris as recommended by the BAER team, to mitigate the danger posed by the residual effects of the Highline Fire in Ellison Creek.

86. Defendant's failure to close the Water Wheel area to the public or otherwise mitigate the danger posed by the residual effects of the Highline Fire was negligent because Defendant knew or should have known of the flash flood risk and knew that visitors who were caught in flood waters would likely suffer severe injuries or death.

87. Under the doctrine of *respondeat superior*, Defendant is vicariously liable for the misconduct of its agents and employees undertaken within the course and scope of their agency or employment.

88. As a result of Defendant's negligent acts and omissions, Plaintiff Julio Cesar Garcia sustained injuries and suffered economic and noneconomic damages, including pain and suffering, grief, emotional distress, and loss of enjoyment of life.

89. As a result of Defendant's negligent acts and omissions, Selia Garcia Castaneda, J.L.V., and eight other members of the Garcia and Garnica families were killed in the flash flood.

90. Plaintiff Susana Villanueva Garcia and all other statutory beneficiaries of Selia Garcia Castaneda and J.L.V. suffered harms and losses including, but not limited to: (1) the loss of love, affection, companionship, care, protection, and guidance since decedents' deaths and in the future; (2) the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and to be experienced in the future; and (3) economic losses.

## COUNT II

### Gross Negligence

91. Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

92. Under the FTCA, Defendant United States of America is the proper defendant for this cause of action.

93. At all relevant times, Plaintiff Julio Cesar Garcia and the Decedents were invitees on public lands and had a legal right to be on the premises.

94. Defendant owed a duty to refrain from engaging in grossly negligent, willful, malicious, or recklessly indifferent action or inaction with respect to the management of its public recreational lands, including the Tonto National Forest, Ellison Creek Watershed, and Water Wheel day use area.

95. Defendant's decision to designate the Water Wheel area for public recreational use was discretionary but, once that decision was made, Defendant and its agents and employees were under a duty to act reasonably to protect visitors from hidden dangers which were known to Defendant and posed a significant risk of serious bodily injury or death to visitors. Therefore, Defendant is not entitled to immunity under the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a).

96. The flash flood risk and residual effects of the Highline Fire constituted an unreasonably dangerous condition, which Defendant knew or should have known would endanger the lives and safety of invitees such as the decedents.

97. Defendant and its agents and employees breached their duty of care in at least the following ways:

   a. Failing to close the Water Wheel area to the public after the BAER team identified debris jams on Ellison and Bonita Creeks and determined that the "first few high intensity storms following the fire [would] pose the greatest flash flood risk to downstream areas";

   b. Failing to close the Water Wheel area to the public after the NWS flood alert was issued on July 15, 2017; and

   c. Failing to take reasonable steps, such as removing debris jams and floatable debris as recommended by the BAER team, to mitigate the danger posed by the residual effects of the Highline Fire in Ellison Creek.

98. Defendant knew or should have known that the first storms of the predictable summer monsoon season would cause flash floods that were intense and filled with debris from the Highline Fire.

99. Defendant knew or should have known that debris jams on Ellison and Bonita Creeks were highly likely to fail during the first monsoon storms of the season, further contributing to the flash flood danger.

100. Defendant knew or should have known that flash flooding along Ellison Creek, including Cold Springs, was essentially certain to occur after the NWS issued its flash flood warning on July 15, 2017.

101. Defendant knew or should have known that any visitors who were caught in the intense, debris-filled flood would be unlikely to escape and would likely be seriously injured or killed.

102. Therefore, Defendant's failure to close the Water Wheel area to the public or otherwise mitigate the danger posed by the residual effects of the Highline Fire was

grossly negligent because Defendant knew or should have known that the flash flood risk created an unreasonable risk of bodily harm to visitors and that there was a high probability that substantial harm would result.

103. Under the doctrine of *respondeat superior*, Defendant is vicariously liable for the misconduct of its agents and employees undertaken within the course and scope of their agency or employment.

104. As a result of Defendant's grossly negligent, willful, malicious, or recklessly indifferent acts and omissions, Plaintiff Julio Cesar Garcia sustained injuries and suffered economic and noneconomic damages, including pain and suffering, grief, emotional distress, and loss of enjoyment of life.

105. As a result of Defendant's grossly negligent, willful, malicious, or recklessly indifferent acts and omissions, Selia Garcia Castaneda, J.L.V., and eight other members of the Garcia and Garnica families were killed in the flash flood.

106. Plaintiff Susana Villanueva Garcia and all other statutory beneficiaries of Selia Garcia Castaneda and J.L.V. suffered harms and losses including, but not limited to: (1) the loss of love, affection, companionship, care, protection, and guidance since decedents' deaths and in the future; (2) the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and to be experienced in the future; and (3) economic losses.

## COUNT III

### Wrongful Death

107. Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

108. Defendant's failure to protect and warn visitors in the Water Wheel area of the flash flood risk was negligent, grossly negligent, reckless, or willful.

109. If decedents' deaths had not ensued, they would have been entitled to maintain an action to recover damages for Defendant's conduct.

110. Pursuant to A.R.S. § 12-611, Defendant is liable to decedents' statutory beneficiaries for decedents' and Plaintiffs' claims and damages.

111. Pursuant to A.R.S. § 12-612(a), Plaintiff Susana Villanueva Garcia, as the surviving mother of J.L.V. and the surviving child of Selia Castaneda Garcia, is entitled to bring this action for damages.

112. Plaintiff Susana Villanueva Garcia, and all statutory beneficiaries of Selia Castaneda Garcia and J.L.V., are entitled to, at a minimum, compensation for the loss of love, affection, companionship, care, protection, and guidance since decedents' death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future; for the income and services that have already been lost and that are reasonably probable to be lost in the future; for the reasonable expenses of funeral and burial; for the reasonable expenses of necessary medical care and services for the injury that resulted in the death; and for other related damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendant as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from decedents' deaths, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future;

B. For special damages, including but not limited to the expenses of decedents' funerals and burials;

C. For pre- and post-judgment interest to the extent permitted by law;

D. For attorneys' fees and taxable costs to the extent permitted by law; and

E. For such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues so triable.

**RESPECTFULLY SUBMITTED**: May 13, 2021

**ROBBINS & CURTIN, p.l.l.c.**

By: /s/Joel B. Robbins
Joel B. Robbins
Lauren Channell
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
*Attorneys for Plaintiffs*

**MUSHKATEL, ROBBINS & BECKER, PLLC**

By: /s/Zachary Mushkatel
Zachary Mushkatel
1529 N. 99th Avenue
Sun City, Arizona 85351-1964
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Elizabeth K. Sichi
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
E: Elizabeth_sichi@usdoj.gov
*Attorney for Defendant, United States of America*

Zachary Mushkatel
1529 N. 99th Avenue
Sun City, Arizona 85351-1964
E: Zach@phoenixlawteam.com
*Co-counsel for Plaintiffs*

/s/ Kimberly M. Gonzalez